[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-10673
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 26, 2011
JOHN LEY
CLERK

D.C. Docket No. 3:09-cr-00294-HWM-TEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE RUFINO UMANA,
a.k.a. Jose Rufino Alvarez-Umana,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 26, 2011)

Before CARNES, PRYOR, and FAY, Circuit Judges.

PER CURIAM:

Jose Umana appeals his 60-month sentence, imposed at the lower end of the

applicable guidelines range, after pleading guilty to one count of illegal re-entry

after deportation, in violation of 8 U.S.C. § 1326. He contends that his sentence was both procedurally and substantively unreasonable.

I.

Umana's base offense level for violating 8 U.S.C. § 1326 was 8. See United States Sentencing Guidelines § 2L1.2 (Nov. 2009). His presentence investigation report increased that base offense level by 16 because Umana had re-entered the United States after being convicted of a crime of violence. See U.S.S.G. § 2L1.2(b)(1)(A). That prior crime of violence was his 1998 state court conviction for child abuse, for which he received a sentence of 31 days in prison and 1 year of probation. Because of the 16-level increase, his offense level came out to 24, which was reduced 3 levels for his timely acceptance of responsibility, resulting in a final offense level of 21. That level, combined with his criminal history category of IV, resulted in an advisory guidelines range of 57–71 months. The PSR also indicated that under the applicable sentencing guidelines, Part K of Chapter 5 and U.S.S.G. § 4A1.3, there was no basis for a departure, and none of the 18 U.S.C. § 3553(a) factors appeared to warrant a sentence outside the advisory guidelines.

Umana initially filed an objection to the 16-level increase in his offense level, arguing that his 1998 conviction for child abuse did not qualify as a crime of violence. At the sentence hearing, however, his counsel withdrew that objection,

stating that he was doing so only "[a]fter further research and review." The court asked Umana himself whether he understood the consequences of withdrawing the objection, and he replied affirmatively. The court then inquired whether Umana had any objections to the factual accuracy of his PSR or to the probation officer's application of the advisory guidelines, and to both questions Umana replied that he had none.

The court then heard argument from both sides about what sentence to impose. Umana offered in mitigation only the argument that his "repeated trips" to the United States had been "purely economical for him to find a job and make money." Umana himself declined several times to say anything further on his behalf.

When asked for its recommendation, the government conceded that it was a "close call" whether under U.S.S.G. § 4A1.3 Umana's criminal history "substantially overrepresented the . . . seriousness of [his] criminal conduct and likelihood to be a recidivist." The government maintained that the advisory guidelines had been calculated correctly, but it asked for a sentence "between the lower end of the [advisory guidelines] range and the midpoint," pointing out that Umana's conviction for child abuse was "a ten year old offense" for which he had received "a relatively short sentence."

3

In response Umana's counsel agreed with the government "totally," noting that while the child abuse conviction was a crime of violence under the guidelines, the "factual scenario and the disposition" of that earlier conviction made it sound like a relatively "mild" crime. The court then inquired:

> Oh, so you're recommending to the Court also that he be sentenced at the lower end – or I believe the suggestion of [the government] was somewhere toward the lower end of the guidelines as opposed to the top of the guidelines or close to the top of the guidelines?

To which Umana's counsel responded, "Yes, Your Honor." Umana himself then indicated he agreed with the representations of his counsel.

The court imposed a sentence of 60 months, a term only three months above the lowest end of Umana's guidelines range and significantly below the statutory maximum of 20 years. See 8 U.S.C. § 1326(b). In imposing that sentence the court stated that it had considered the advisory guidelines and the 18 U.S.C. § 3553(a) factors and found that a sentence of 60 months was "sufficient but not greater than necessary to comply with the statutory purposes of sentencing." The court also imposed a three-year period of supervised release together with a number of "special conditions," including that Umana not re-enter the United States in the event he was deported, that he participate in an approved domestic violence program, and that he submit to random drug and alcohol testing. The

4

court then asked both Umana and his counsel whether they had any objections to either the sentence or the manner in which it had been pronounced, and neither did.

II.

Umana raises two main arguments about the procedural reasonableness of his sentence. First he argues that the district court failed to adequately explain its consideration of his prior child abuse conviction and the resulting 16-level increase in his offense level. Second he argues that the district court's mere recitation of the fact that it had considered the § 3553(a) factors was an insufficient explanation of his sentence in light of the concerns raised about that child abuse conviction and whether it tended to over-represent his criminal history.

We typically review the procedural reasonableness of a sentence for abuse of discretion, making sure the district court properly calculated the guidelines range, treated the sentencing guidelines as advisory, considered the § 3553(a) factors, did not select a sentence based on clearly erroneous facts, and adequately explained the chosen sentence. See Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 597 (2007). The government argues, however, that because Umana raised no objections at the sentence hearing to any aspect of the procedural

reasonableness of his sentence, including the court's explanation of that sentence, we should review only for plain error. The standard of review makes no difference here, because we find no error.

The district court must state at the sentence hearing its reasons for imposing a particular sentence. 18 U.S.C. § 3553(c). But the court is not required to "state on the record that it has explicitly considered each of the section 3553(a) factors" or to discuss each of them individually. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (citation omitted). To satisfy that standard, "[a]n acknowledgment that the district court has considered the defendant's arguments and the § 3553(a) factors will suffice." United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008).

Umana's sentence was procedurally reasonable because the district court properly calculated the guidelines range, treated that range as advisory, and adequately explained the sentence and its consideration of the § 3553(a) factors. While Umana is correct that the court did not provide an elaborate explanation for the sentence it chose or detail its consideration of each of the § 3553(a) factors, those facts do not make for procedural error here. The sentence hearing itself, as the government points out to this Court, was "as uncontroversial as they come," with the parties agreeing to the facts in the PSR, the offense level, the criminal

6

history category, the advisory guidelines range, and even the appropriateness of a sentence at the low end of that range. Given those circumstances, the explanation the court offered for the sentence it chose was adequate, and we find no error.

III.

Umana also contests the substantive reasonableness of his sentence, arguing that it was greater than necessary to achieve the purposes of sentencing. We normally review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard, examining the actual sentence imposed in light of the record and the § 3553(a) factors. Gall, 552 U.S. at 51, 56, 128 S.Ct. at 597, 600. After performing that examination, we will vacate a defendant's sentence "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted).

We need not conduct that inquiry here, however, because the record shows that Umana requested the actual sentence that the court imposed. His counsel specifically agreed when the court asked, "So you're recommending . . . that [Umana] be sentenced . . . toward the lower end of the guidelines . . .?" And he

was.  Having asked for the sentence he got, Umana's challenge to it is barred by the doctrine of invited error.  See United States v. Love, 449 F.3d 1154, 1157 (11th Cir. 2006) (per curiam) (applying the "cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party" in rejecting a defendant's challenge to his sentence).

**AFFIRMED.**